**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CANDIE L. WATSON,**

      **Plaintiff,**

|  |  |
|---|---|
| **v.** | **Civil Action 2:16-cv-953** |
| | **Judge Michael H. Watson** |
| | **Magistrate Judge Chelsey M. Vascura** |

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Candie L. Watson ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.   This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff Reply (ECF No. 19), and the administrative record (ECF No. 11).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.   BACKGROUND

Plaintiff protectively filed her applications for benefits on July 9, 2013, alleging that she has been disabled since May 20, 2013, due to strokes, left-sided numbness, and vertigo.  (ECF No. 11 at PAGEID## 1030-39, 1062.)  On August 5, 2015, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge Jason

Earnhart (the "ALJ") on August 5, 2015, at which Plaintiff, represented by counsel, appeared and testified. (*Id.* at PAGEID## 882-922.) The ALJ subsequently issued a decision on September 17, 2015, denying Plaintiff benefits. (*Id.* at 856–76.) On August 9, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision. (*Id.* at 840.)

Plaintiff raises four arguments in her Statement of Errors: (1) the ALJ's mental Residual Functional Capacity[1] ("RFC") was not supported by substantial evidence; (2) the ALJ erred at Step two by finding Plaintiff's migraine headaches were not severe; (3) the ALJ violated the treating physician rule by assigning little weight to Dr. Zimmerer's opinion; and (4) the Court should remand the case for consideration of new and material evidence under 42. U.S.C. § 405(g), Sentence six.

The Commissioner counters that the ALJ reasonably considered all of the evidence when forming Plaintiff's mental RFC; that the ALJ's credibility determination concerning Plaintiff's migraines at Step Two was supported by substantial evidence; that the ALJ's decision to assign little weight to the opinion of treating physician Dr. Zimmerer was supported by good reasons and substantial evidence; and that Plaintiff cannot satisfy the elements to warrant a sentence six remand.

## II.    RELEVANT RECORD EVIDENCE

### A.    State Agency Physicians & Psychologists

Consulting Psychologist Floyd Sours, MA examined Plaintiff for disability purposes on September 4, 2013. (ECF No. 11 at PAGEID# 1217-24.) State agency reviewing psychologists,

---

[1]A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

Courtney Zeune, Psy.D. and Bonnie Katz, Ph.D., and state-agency reviewing physicians, Drs. William Bolz, M.D. and Gerald Klyop, M.D., subsequently reviewed the record and offered their opinions as to Plaintiff's limitations.

### 1.      Examining Psychologist Mr. Sours

Plaintiff was referred by the Division of Disability Determination (DDS) to Mr. Sours for an examination for disability purposes on September 4, 2013. (ECF No. 11-7 at PAGEID# 1217-24.) Plaintiff reported that she suffers from depression, panic attacks, and anxiety and that she takes medication but has not received treatment for these conditions. (*Id.* at PAGEID# 1217.) She said that she experienced depression pretty much every day for the last two weeks and described withdrawal, poor concentration, loss of interest, fatigue, forgetfulness, irritability, and poor sleep. She added that she was anxious but did not experience panic attacks. (*Id.*) Plaintiff indicated that on an average day, she performs personal hygiene, lets the dogs out, dresses, watches television, cleans the house, does laundry, sits on the porch, and eats meals. She said that she has no hobbies and socializes only with her children. (*Id.* at PAGEID# 1219.) Plaintiff also reported a history of vertigo and a possible mini stroke. (*Id.*) Plaintiff informed Mr. Sours that she had never been fired and that she got along with people in her past jobs. (*Id.* at PAGEID# 1218.)

Mr. Sours described Plaintiff as "serious, cooperative and talkative." (*Id.*) He observed that her speech was normal, clear, and understandable and that she was oriented, coherent, and alert during the interview. His testing yielded a full-scale IQ score of 71.

Mr. Sours diagnosed Plaintiff with major depression, generalized anxiety disorder, cognitive disorder, and borderline intellect. (*Id.* at PAGEID# 1220.) Based upon her IQ testing

3

results, Mr. Sours opined that Plaintiff "would have limitations in her ability to understand, remember and carry out instructions in a work setting at present." (*Id.* at PAGEID# 1221.) Citing Plaintiff's self-reports of poor concentration as a result of depression and several incidents of potential mini-strokes, Mr. Sours opined that she "would have some limitations in her ability to attend and concentrate as she persists and paces herself in the pursuit of simple, repetitive tasks and multi-step-tasks in a work setting." (*Id.*) He further opined that Plaintiff "would have the ability to maintain appropriate behavior with co-workers and supervisors in a work setting" and also that she "would have the ability to maintain appropriate behavior in a work setting under work pressure assuming she is in good health. (*Id.*) Finally, Dr. Sours opined that Plaintiff should not be permitted to manage any awarded benefits, but stated that this recommendation should be reconsidered if Plaintiff is not diagnosed with a cognitive or learning disorder.

### 2. Reviewing Psychologists Drs. Zeune and Katz

On September 24, 2013, state-agency reviewing psychologist Dr. Zeune reviewed the record. Dr. Zeune opined that Plaintiff's allegations about her symptoms were only partially credible. She pointed out that Plaintiff's reports of neuro-type symptoms are not supported by the objective findings and were instead suspected to by psychological findings. She further noted that Plaintiff's alleged lifting and ambulating restrictions were not supported by the findings. Dr. Zeune acknowledged that Plaintiff's reports of "some depression and anxiety" were supported by evidence in the file. (*Id.* at PAGEID# 995.) Dr. Zeune indicated that she accorded "limited weight" to the opinion of Dr. Sours, explaining that Plaintiff would likely have "some difficulty coping with stress and pressure in the workplace." (*Id.*) She accorded no

weight to the opinion of Dr. Zimmerman, explaining that the record contains no physical findings to explain Plaintiff's symptoms. (*Id*.) Dr. Zuene opined that Plaintiff retained the mental RFC to remember 1-2 step instructions; maintain concentration for 1-2 step tasks, and work within a setting with only minor changes in the work place. She added that Plaintiff "would benefit from breaks during the workday to maximize her ability to persist on tasks."

Upon reconsideration on December 24, 2014, Dr. Katz affirmed Dr. Zeune's opinion with the addition of the mental RFC limitation that Plaintiff interact with others on a superficial basis. (*Id*. at PAGEID# 1010.)

## 2. Reviewing Physician Dr. Bolz

State agency reviewing physician Dr. Bolz reviewed Plaintiff's medical records in September 2013 and determined that she did not have medically determinable physical impairment. (*Id*. at PAGEID# 992.) He concluded that Plaintiff could adjust to other work and offered the following explanation:

> You said you were disabled due to strokes, left side numbness and vertigo. The medical evidence shows that you were experiencing numbness and dizziness previously but these symptoms resolved. You have adequate muscle strength and movement in your joints. You have symptoms of mental health condition[s] that impact your ability to follow complex directions, concentrate and cope with high levels of stress and pressure. However, you are able to follow some simple instructions and can make decisions in your own interests. Your conditions are not expected to prevent you from performing all types of work activities. Your treating physician, Dr. Michael Zimmerer, provided an opinion regarding your condition and functional limitations. However, it was not supported by the preponderance of file evidence and therefore it was afforded little weight. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in the file, we have determined that you can adjust to other work.

(*Id*. at PAGEID# 998.)

### 3. Reviewing Physician Dr. Klyop

On December 31, 2013, Dr. Klyop reviewed Plaintiff's medical records after Plaintiff reported a worsening of her condition. Plaintiff reported that she may require back surgery, that she could not get rid of her headaches, that she could hardly move her arm, and that she could hardly sleep. (*Id*. at PAGEID# 1001.) Plaintiff also underwent an MRI for her left arm, neck, and shoulder since Dr. Bolz had reviewed the medical records. Dr. Klyop, like Dr. Bolz, concluded that Plaintiff had no physical medically determinative impairments, pointing out that all of the objective testing revealed normal findings. (*Id*. at PAGEID# 1006.)

Dr. Klyop agreed with Dr. Bolz that Plaintiff could adjust to other work and reasoned in part as follows:

> You said you are unable to work due to strokes, left side numbness, and vertigo. Despite the weakness or dizziness you are currently experiencing, you are able to move about and use your arms, legs, hands, and back to perform many types of activities. Although you have a history of emotional problems, current evidence shows that you are able to think, communicate and care for your own needs. You can get along with others, do your usual daily activities and remember and follow basic instructions. Your treating physician, Dr. Michael Zimmerer, provided an opinion regarding your condition and functional limitations. However, it was not supported by the preponderance of file evidence and therefore it was afforded little weight. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in the file, we have determined that you can adjust to other work.

(*Id*. at PAGEID#1013.)

## B. Treating Physician Dr. Zimmerer

Plaintiff's primary care physician, Michael Zimmerer, M.D., began treating Plaintiff on August 24, 1994. (ECF No. 11-7 at PAGEID# 1160.) The record reflects that he continued to treat Plaintiff past the administrative decision. (*Id.* at PAGEID## 1268-1303, 1334-85, 1475-90.) Dr. Zimmerer diagnosed Plaintiff with vertigo, tobacco abuse, unspecified essential

hypertension, left-sided weakness, acute right lumbar radiculopathy, and cervical radiculopathy. (*Id.*)

In August 2013, Dr. Zimmerer completed a questionnaire on behalf of the Social Security Administration. (*Id.* at PAGEID# 1159-61.) Dr. Zimmerer listed Plaintiff's diagnoses at that time as right lumbar radiculopathy and vertigo of uncertain etiology. He stated that results of Plaintiff's MRI and MRA were normal and that his examination findings were unremarkable. (*Id.* at PAGEID# 1160.) Dr. Zimmerer noted that, at that time, Plaintiff continued to have some neurologic symptoms including pain, weakness and imbalance episodes. (*Id.* at PAGEID# 1161.)

Objective findings include a lumbar spine MRI taken in December 2013 that revealed mild disk disease at L4-5 and L5-S1. (*Id.* at PAGEID# 1510.) Plaintiff's management physician, Yahyah Bakdalieh, M.D., noted in May 2014 that a previous CT scan of her cervical spine showed mild disc bulge at C3-C4 and mild degenerative disc disease at C5-C6 with moderate posterior disc osteophyte complex. (*Id.* at PAGEID# 1548.)

In January 2015, Plaintiff reported that her headaches were somewhat improved. (*Id*. at PAGEID# 1334.) In February 2015, Plaintiff reported that she had some increased headaches and said that she would like to restart her gabapentin because she felt it "controlled her headaches." (*Id*. at PAGEID# 1372.) When seen by Dr. Zimmerer in March 2015, Plaintiff did not complain of headaches, but reported that she felt shaky and that it was difficult to eat. She also reported that she had not recently taken her gabapentin. Dr. Zimmerer observed, "I have to admit I couldn't find any dramatic abnormality . . . There is not dramatic physical finding." (*Id.* at PAGEID# 1368-69.)

On June 25, 2015, Dr. Zimmerer opined that Plaintiff's diagnoses include myofascial pain, cervical radiculopathy, anthralgia, and dysphagia and that her prognosis is fair to poor. (*Id.* at PAGEID# 1466-69.) Dr. Zimmerer identified his clinical findings as Plaintiff's endorsed tenderness throughout her back and stiffness and tenderness in her joints. (*Id.* at PAGEID# 1466.) He indicated that Plaintiff's treatment had included steroid injections, Gabapentin, and nerve medication. (*Id.*) According to Dr. Zimmerer, Plaintiff also suffered from depression "possibly," anxiety, and a somatoform disorder. (*Id.* at PAGEID# 1467.) He opined that Plaintiff would be limited to sitting for less than two hours, standing for less than two hours, and concentrating for less than 75% of the time. He further opined that Plaintiff could not tolerate even low-stress work and would miss work more than four times a month. (*Id.* at PAGEID# 1469.) He concluded that Plaintiff could rarely lift less than 10 pounds and never lift 10 pounds or more. He also found that she had extreme limitations in reaching, handling, and fingering, as well as an inability to twist, bend, crouch/squat, or climb ladders and that she could only rarely climb stairs. Dr. Zimmerman further determined that Plaintiff would be off-task from simple work tasks "25% or more" of the time and opined that she would be absent four or more days per month. (*Id.*)

## C.    Hearing Testimony

On August 5, 2015, a hearing was held before the ALJ. (ECF No. 11-2 at PAGEID# 884.) Plaintiff, who was represented by counsel, appeared and testified. At the hearing, Plaintiff testified that she used to watch some of her grandchildren, but stopped at the end of last year [2014] or the beginning of the year [2015] due to her alleged worsening condition. (*Id.* at PAGEID# 888.)

Plaintiff testified that she has a boyfriend who spends several nights a week with her. (*Id.* at PAGEID# 887.)  She said that she has a driver's license and is able to drive a car.  She testified that she drives to Walmart for prescriptions, but typically finds someone to take her to doctors' appointments or will take the back roads if she drives herself.  (*Id.* at PAGEID# 890–91.)  She testified that her daily activities included using Facebook on her telephone and playing games on her phone about three-to-four hours a day.  She also said that she still smoked half of a pack of cigarettes per day.

Plaintiff said she became disabled on May 20, 2013, because after working a full shift at Dollar General and going to bed, she woke up with stroke-like symptoms, including slurring her words, dizziness, and a numb left side.  (*Id.* at PAGEID# 895-99.)  She said she went back to sleep and called the ambulance in the late afternoon because she was shaking and could hardly walk.  Plaintiff said she took time off work and had another episode a week later.  Plaintiff said that her pain started before she left Dollar General and described it as pain in her shoulder, neck, back, and leg.  She added that it was so bad that she could not even bend over or walk very far.  Plaintiff stated that she would unable to do anything she did at her old job and that "there's no job out there" that she could do because of her limitations on bending, walking, and standing.

Plaintiff brought a cane to the hearing and said that a physical therapist told her to use the cane because of "how bad [her] back was" and because the therapist thought she had suffered a stroke that the doctors were not able to detect.  (*Id.* at PAGEID# 904.)  Plaintiff said that she has had to use her cane more since she started getting injections.  She said that she uses it especially when she goes to stores, but also sometimes in her home.  She explained that her legs are weak because her knees "are really bad."  (*Id.* at PAGEID# 906.)

Plaintiff testified that she lost her mom and brother in the prior year. She said that when her brother was in hospice, she never left him except to go see her mom at the hospital.

Plaintiff testified that her daughter does her heavy housecleaning because it would take her five hours to clean her living room due to her need to take breaks. (*Id.* at PAGEID# 907.) She had been unable to do heavy housecleaning for the last couple of years. (*Id.*)

Upon cross-examination from her counsel, Plaintiff estimated that she could stand for about five minutes before needing to sit down and could only lift "something light," approximately five pounds, with her right hand because she cannot use both of her arms and hands together. (*Id.* at PAGEID# 912.) Plaintiff testified that she takes the medication Gabapentin for her headaches on a daily basis but that sometimes the medication controls the headaches, but sometimes it does not help if she gets a migraine. (*Id.* at PAGEID# 912–13.) She estimated she gets a migraine once per week.

Plaintiff testified that the injections she receives "ease the pain" but that they do not really help. (*Id.* at PAGEID# 910.) Plaintiff also testified that she suffers from carpal tunnel and that she sometimes drops things without knowing and that it hurts to do things, like peel potatoes.

**D.      Vocational Expert's Testimony**

Vocational Expert Lynne M. Kaufman, M.S. (the "VE") testified at the administrative hearing. (*Id.* at PAGEID# 914-21.) The VE classified Plaintiff's past relevant work as a stores laborer/order puller, a medium, unskilled position; a housekeeper/cleaner, a light, unskilled position; and a door repairer, a medium exertion, semi-skilled position. (*Id.* at PAGEID# 915–16.) The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's vocational

profile and the residual functional capacity RFC the ALJ ultimately assessed.  The VE testified that such an individual was capable of performing Plaintiff's past relevant work as a housekeeper or cleaner.  (*Id.* at PAGEID# at 916–17.)  The VE also testified the hypothetical individual could perform light, unskilled occupations such as laundry worker, with 3,000 jobs in the state and 78,000 jobs in the national economy; an assembler, with 2,500 jobs in the state and 50,000 jobs in the national economy; a sorter, with 4,000 jobs in the state and 55,000 jobs in the national economy; and a packager, with 2,500 jobs in the state and 80,000 jobs in the national economy.  (*Id.* at PAGEID# 917-19.)

The VE also testified that the tolerance for being off work during the workday is not more than 10% and not more than one day off per month.  The VE opined that an employee who exceeded these tolerances could not sustain competitive employment without an accommodation.  (*Id.* at PAGEID# 919.)

### III.   THE ADMINISTRATIVE DECISION

On September 17, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PAGEID# 856-76.)  The ALJ noted that Plaintiff meets the insured status requirements through December 31, 2018.  (*Id.* at PAGEID#

858.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since May 20, 2013, her alleged onset date of disability. (*Id.*)

The ALJ found that Plaintiff has the severe impairments of anxiety disorder, depressive disorder, organic mental disorder, borderline intellectual functioning, mild degenerative disc disease of the lumbar and cervical spine with lumbosacral neuritis, and chronic pain syndrome. (*Id.*)  The ALJ noted that Plaintiff has complained of migraine headaches and been diagnosed with possible very mild right carpel tunnel syndrome, but considered these impairments as non-severe because they did not significantly limit Plaintiff's ability to perform basic work activities. (*Id.* at PAGEID# 859.)  He further found that, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  At step four of the sequential

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently reach, push, and pull with both upper extremities. She can occasionally balance, stoop, kneel, crouch, crawl, operate foot controls, and climb ramps or stairs. She can perform simple, routine, repetitive tasks involving no fast production [pace], and with no more than occasional changes in the work setting that are carefully explained. She can perform jobs requiring no more than occasional interaction with supervisors, coworkers, and the general public.

(*Id.* at PAGEID# 864.)

As to Plaintiff's mental RFC, the ALJ adopted the assessments from the state agency psychologists, Courtney Zeune, Psy.D. and Bonnie Katz, Ph.D., finding their determinations consistent with and well-supported by the evidence of the record as a whole. (*Id.* at PAGEID# 874.) The ALJ accorded "partial" weight to the assessment provided by consultative examiner, Floyd Sours, M.A., finding it was not consistent with Plaintiff's ability to drive a car, live independently, manage her money and provide child care for her grandchildren . . . ." (*Id.* at PAGEID# 873.)

The ALJ indicated that in assessing Plaintiff's mental RFC, he considered the opinions and findings of the treating, examining, and reviewing medical sources, as well as other evidence of Plaintiff's activities and treatment. (*Id.* at PAGEID# 872–75.)

The ALJ rejected the November 2013 and June 2015 opinions of Plaintiff's treating physician Dr Zimmerer, M.D., reasoning that Dr. Zimmerer cited no clinical findings or results from objective tests to support his opinion. (*Id.* at PAGEID# 867, 871.) The ALJ further noted that Dr. Zimmerer himself reported in March 2015 that he could not find any major physical

abnormalities on examinations.  (*Id.* at PAGEID# 869.)  As to Dr. Zimmerer's opinion of mental

health limitations, the ALJ determined that Dr. Zimmerer did not specialize in psychology.  (*Id.*

at PAGEID# 871.)  The ALJ further questioned whether Dr. Zimmerer's failure to identify any

major objective abnormalities indicates that his opinions were motivated by sympathy for his

patient or a desire to avoid conflict.  (*Id.* at PAGEID# 871–72.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past

relevant work as a housekeeper as well at other jobs that exist in significant numbers in the

national economy.  (*Id.* at PAGEID# 875–76.)  He therefore concluded that Plaintiff was not

disabled under the Social Security Act.  (*Id.* at PAGEID# 876.)

## IV.     EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

On October 2, 2015, Plaintiff appealed the ALJ's decision.  (ECF No. 11-2, at PAGEID#

851.)  In addition to appealing the ALJ's decision, Plaintiff also presented new evidence for the

Appeals Council to consider, specifically Exhibits 26F, 27F, and 28F.  (*Id.* at PAGEID# 843.)

The Appeals Council found no basis to alter the ALJ's decision.  (*Id.* at PAGEID# 841.)

The first Exhibit Plaintiff supplied in support of new and material information was

Exhibit 26F, which contains treatment notes from Genesis Health Systems on July 17, 2015.

(ECF No. 11-8 at PAGEID # 1574–1590.)  These treatment notes contained information that she

had underwent numerous interventional procedures with varied responses. For example, Plaintiff

initially underwent an epidural steroid injection with a 40% decrease in pain for a very brief

period.  (*Id.* at PAGEID# 1575.)  During the July 17, 2015 visit, Plaintiff reported a reduction in

pain, but continued to rate her pain at a level 10/10.  Upon physical examination, the provider

noted that Plaintiff was in no distress, exhibited normal strength, and displayed no sensory

deficit, but that she exhibited a decreased range of motion and endorsed tenderness over her lumbar region. (*Id.* at PAGEID# 1578.)

During a July 29, 2015 follow-up visit, after undergoing the electromyography ("EMG"), Plaintiff described a constant aching sensation with sharp pain into her legs, with the left more bothersome than the right. She reported her pain increased with standing and walking. She also described weakness and tingling that was diffuse including anterior and posterior. (*Id.* at PAGEID# 1579.) She also rated her pain at a level 10/10. Upon physical examination, the provider again noted that Plaintiff was in no distress, exhibited normal strength, and displayed no sensory deficit, but that she exhibited a decreased range of motion and endorsed tenderness over her lumbar region. (*Id.* at PAGEID# 1578.) Dr. Chang noted that despite Plaintiff's complaints of an aching sensation in both legs with tingling and weakness, EMG results were normal and her endorsed pain displayed no radicular pattern. Plaintiff's provider observed that "[w]e do not have a clear explanation for her symptoms and without response to interventional treatment we cannot justify invasive procedures." (*Id.* at PAGEID# 1583.) On August 11, 2015, Plaintiff complained of back, knee, arm, and hand pain and rated her pain at a level 8 of 10. Upon physical examination, Plaintiff was observed to be in no distress, but she endorsed tenderness over the lateral portion of both of her hips.

The second exhibit, Exhibit 27F, contains additional treatment notes from Dr. Zimmerer dated between June 18, 2015, and October 23, 2015. (ECF No. 11-8 at PAGEID# 1591–1614.) On June 18, 2015, Plaintiff complained of pain in her shoulder, hands, knees, and lower back. Dr. Zimmerer observed that Plaintiff's range of motion for both her back and knees was normal although Plaintiff endorsed tenderness up and down her back in the muscular area and some

tenderness in the midline.  Dr. Zimmerer stated as follows:  "[Plaintiff] continues to have severe pain and I am uncertain to be able to determine what her underlying etiology is.  It appears that she may have some fibromyalgia or other musculoskeletal disorder.  She will follow up in 3 months or as needed."  (*Id.* at PAGEID# 1593.)

When seen in September 2015, Dr. Zimmerer again recorded normal and unremarkable findings.  (*Id.* at PAGEID# 1597.)

In October 2015, Plaintiff presented with complaints of leg pain and dizziness.  Dr. Zimmerer stated, "This doesn't look like fibromyalgia to me.  Her tenderness does not seem to be point specific.  She seems to have joint sensitivity with movement.  There is no obvious joint swelling or instability."  (*Id.* at PAGEID# 1601.)  He added, "There is no obvious etiology for her diffuse discomfort.  This may be a fibromyalgia picture, but it doesn't fit the perfect picture.  There seems to be a significant psychological component."  (*Id.*)

The last exhibit submitted for review, Exhibit 28F, reflects emergency room records from Fairfield Medical Center, dated July 25, 2015.  (*Id.* at PAGEID# 1616-30.)  Plaintiff presented with complaints of a feeling swelling to her entire left side of her body including her face and left arm and left leg and some chronic weakness on the left side as well.  She further complained of stabbing pain in her left flank.  (*Id.* at PAGEID# 1617.)  A CT of her head was taken which showed no acute intracranial abnormality.  (*Id.* at PAGEID# 1616.)  Plaintiff rated her pain as "excruciating" at a level 10/10.  (*Id.* at PAGEID# 1620.)  Upon physical examination, it was noted that Plaintiff was in no distress and that her mood and affect were normal.  Examination findings were normal with the exceptions of "mild weakness in her grip strength on her left compared to her right."  (*Id.* at PAGEID# 1616.)  She was diagnosed with a migraine and

paresthesia. Plaintiff indicated that she had run out of her gabapentin for her headaches. Plaintiff was treated for her headache and discharged. (*Id.* at PAGEID# 1622.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

As set forth above, Plaintiff raises four contentions of errors.  In her first contention of error, Plaintiff submits that her mental RFC is not supported by substantial evidence because it fails to include limitations Drs. Zeune and Katz opined even though the ALJ adopted those opinions.  Within this contention of error, Plaintiff also challenges the ALJ's consideration of Mr. Sours' opinion.  (ECF No. 12 at PAGEID# 1636-40.)  In her second contention of error, Plaintiff contends that the ALJ erred at Step Two in failing to find her migraine headaches to be a severe impairment.  (*Id.* at PAGEID# 1641-42.)  In her third contention of error, Plaintiff posits that the ALJ violated the treating physician rule by rejecting the opinions of Dr. Zimmerer.  (*Id.* at PAGEID# 1643-46.)  Finally, Plaintiff's maintains that remand under Sentence six of 42 U.S.C. §405(g) for administrative consideration of certain new and material evidence is warranted.  (*Id.* at PAGEID# 1647-49.)  The Undersigned will consider Plaintiff's challenge to the ALJ's Step Two finding before considering her challenges to the ALJ's consideration and weighing of the opinions of Drs. Zeune, Katz, and Zimmerman and Mr. Sours and his arguments relating to the evidence she submitted to the Appeals Council.

## A.    The ALJ's Step Two Finding Relating to Migraines

Within this contention of error, Plaintiff asserts that the ALJ "ignored repeated and detailed references to [Plaintiff's alleged] headaches and thus failed to account for this impairment."  (Pl.'s Reply, ECF No. 19 at PAGEID# 1677.)  More specifically, Plaintiff argues that the ALJ ignored Dr. Bjornstad's documentation of the existence and persistence of her

migraines.

The undersigned finds that the ALJ did not err at step two with respect to his consideration of Plaintiff's alleged migraines.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental

impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . .").

Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). "[S]ymptoms" consist of a claimant's description of his or her alleged impairment." 20 C.F.R. § 404.1528(a). In contrast, "signs" include "psychological abnormalities which can be observed." 20 C.F.R. § 404.1528(a)-(b).

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ determined Plaintiff had the following severe impairments: "anxiety disorder, depressive disorder, organic mental disorder, borderline intellectual function, mild degenerative disc disease of the lumbar and cervical spine with lumbosacral neuritis and chronic pain syndrome[.]" (ECF No. 11-2 at PAGEID# 858.) (internal citations omitted). Contrary to Plaintiff's assertion that he "ignored" her migraines, the ALJ considered them, but found them to

be non-severe explaining as follows:

> [Plaintiff] has complained of migraine headaches on several occasions, but also reports that the headaches are improved with medication. Her treatment and reports to physicians do not support her allegations of debilitating migraines at least once a week. . . . Because [this] impairment do[es] no significantly limit [Plaintiff's] ability to perform basic work activities, [it is] considered no severe.

(*Id*. at PAGEID# 859 (internal citations to the record omitted).)

Moreover, although the ALJ found Plaintiff's alleged migraines to be not severe, he considered them again within his RFC analysis. *See Pompa*, 73 F. App'x at 803; *Maziarz*, 837at 244. For example, the ALJ acknowledged Plaintiff's allegations that she has "daily headaches," that "[s]he has headaches, and experienced a migraine as recently as the week before her hearing," that she said "she gets migraines at least once per week, for which she is prescribed gabapentin," and that she reported to Dr. Bjornstad that she gets severe headaches once per week. (*Id*. at PAGEID## 864-65, 869.) He concluded, however, the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible . . . ." (*Id*.) The ALJ stated that Plaintiff "has many subjective complaints, but unfortunately, there is little objective evidence to support them at the level of severity [she] alleges." (*Id*. at PAGEID# 873.) With respect to Plaintiff's alleged headaches, the ALJ thoroughly examined the record and noted that Plaintiff often made no mention of headaches. He also pointed out that all of Plaintiff's cranial radiology revealed normal results. (*Id*. at PAGEID## 869, 874.) The ALJ further observed that Plaintiff reported that her headaches were helped by taking Neurontin (also known as gabapentin) and concluded that the "medical evidence does not support cephalgia [headaches] of the frequency and severity that she alleges." (*Id*. at PAGEID## 874.) In addition to the absence of evidence supporting Plaintiff's extreme

complaints, the ALJ also pointed out the numerous inconsistencies between Plaintiff's testimony and statements to her providers, inconsistencies between Plaintiff's self-reports and ratings of pain and her providers' observations, and Plaintiff's lack of treatment for her alleged disabling mental impairments, among other reasons for his credibility assessment.

Significantly, Plaintiff does not challenge the ALJ's credibility assessment. Regardless, the undersigned finds that substantial evidence amply supports the ALJ's credibility determination and that he reasonably considered her allegations relating to migraines. Although Plaintiff correctly pointed out that there are several references to her complaints of migraines in the record, as the ALJ points out, many records reveal no complaints of headaches. The ALJ also reasonably considered that Plaintiff reported that her headaches were improved in January 2015, and then in February 2015, when she reported some increased headaches, she asked for more gabapentin (Neurontin) because that medication "controlled her headaches." (*Id*. at PAGEID## 1334, 1372.) Consistently, when Plaintiff reported to the emergency room in July 2015 and was diagnosed with a migraine, she indicated that she had run out of her gabapentin. (*Id.* at PAGEID# 1622.) And although the ALJ ultimately concluded that Plaintiff was *more* limited that that opined by the state-agency reviewing physicians, both Drs. Klyop and Bolz considered Plaintiff's allegations concerning her headaches, and determined that her alleged headaches did not constitute a medically determinable impairment. (*Id*. at PAGEID## 998, 1001, 1006.)

In sum, the undersigned finds that the ALJ did not commit reversible error with respect to his Step Two finding. Moreover, contrary to Plaintiff's assertions, the ALJ did not ignore references in the record to her migraines, but instead considered them and reasonably concluded

that Plaintiff's allegations about the frequency, intensity, persistence and limiting effects of her migraines were not entirely credible. For these reasons, it is recommended that this contention of error be **OVERRULED**.

**B.** **The ALJ's Consideration of the Opinions of Drs. Zeune, Katz, and Zimmerman and Mr. Sour**

The undersigned likewise finds that the ALJ properly evaluated and weighed the opinions of Drs. Zeune, Katz, and Zimmerman and Mr. Sour.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir.

2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1. State Agency Reviewing Psychologists, Drs. Zeune and Katz

Citing *Ealy v. Comm'r of Social Security*, 594 F.3d 504 (6th Cir. 2010), Plaintiff contends that the mental RFC the ALJ assessed is not supported by substantial evidence because notwithstanding his adoption the opinions of Drs. Zeune and Katz, he omitted a limitation they opined. The undersigned disagrees.

Plaintiff correctly points out that the ALJ adopted the opinions of the state-agency reviewing psychologists, Drs. Zeune and Katz. (ECF No. 11-2 at PAGEID# 874.) As discussed above, Dr. Katz opined that Plaintiff retained the mental RFC to remember 1-2 step instructions; maintain concentration for 1-2 step tasks, and work within a setting with only minor changes in the work place. Upon reconsideration on December 24, 2014, Dr. Katz affirmed Dr. Zeune's opinion with the addition of the mental RFC limitation that Plaintiff interact with others on a superficial basis. (*Id.* at PAGEID# 1010.) Plaintiff does not dispute that the RFC the ALJ assessed incorporates *all* of these limitations, including the additional limitation Dr. Katz added upon reconsideration.

Instead, Plaintiff cites Dr. Katz's observation that Plaintiff "would benefit from breaks during the workday to maximize her ability to persist on tasks" to argue that the ALJ should have addressed Plaintiff's need for breaks during the workday. (Pl.'s Statement of Errors, ECF No. 12 at PAGEID# 1639.) Plaintiff's argument fails to persuade. As the Commissioner points out, *all* jobs contemplate "breaks during the workday." *Cf.* SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983) (acknowledging that normal breaks are included throughout the workday such that a claimant who needs to vary sitting and standing may do so during these breaks). Neither Dr. Katz nor Dr. Zeune concluded that Plaintiff required frequent or additional breaks or unscheduled breaks. Nor did they conclude that she would be off task a certain percentage of the day unless he took more breaks than normal. Following a lengthy discussion, the ALJ, like Drs. Katz and Zeune, concluded that Plaintiff had "no more than moderate limitation in maintaining concentration persistence and pace for work-related tasks." (ECF No. 11-2 at PAGEID# 862.) The undersigned finds that the ALJ included all of the limitations assessed by Drs. Katz and Zeune and that substantial evidence supports his mental RFC assessment.

It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's contention of error relating to the ALJ's consideration of the opinions of Drs. Katz and Zeune.

### 2. Consultative Examining Psychologist, Mr. Sours

According to Plaintiff, the ALJ erred by refusing to address Mr. Sours' finding of a reduction in Plaintiff's ability to maintain attention, concentration, persistence, and pace even within the narrowed context of simple, routine tasks.

The undersigned finds no error in the ALJ's consideration and weighing of one-time, examining psychologist Mr. Sours. As the Commissioner points out, the opinions of one-time

examining psychologists are not entitled to any special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Thus, the ALJ was not even required to give good reasons for the rejection of such an opinion. *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *cf. Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (no error where the ALJ failed to mention report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss opinion of consultative examiner was harmless error).

Here, the ALJ offered a thorough discussion of Mr. Sours' examination. (*Id*. at PAGEID## 872-73.) The ALJ accorded his opinion only "partial weight," however, reasoning that "it is not consistent with [Plaintiff's] ability to drive a car, live independently, manage her money and provide childcare for her grandchildren through the beginning of 2015 . . . ." (*Id*. at PAGEID# 873.) Thus, although he was not even required to do so, the ALJ articulated good reasons for why he did not conclude that Plaintiff required additional limitations beyond those he assessed in Plaintiff's mental RFC. Notably, the ALJ concluded that in some regards, Plaintiff was *more* limited than Mr. Sours opined. In addition, as discussed above, the ALJ's decision made clear that he adopted the opinions of Drs. Katz and Zeune in assessing his mental RFC and offered an explanation for why he credited their opinions.

In sum, the undersigned concludes that the ALJ did not err in his weighing and consideration of Mr. Sours' opinion and further finds that substantial evidence supports his mental RFC assessment. It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's contention of error relating to the ALJ's consideration of Mr. Sours' opinion.

### 3. Treating Physician, Dr. Zimmerer

The undersigned likewise rejects Plaintiff's contention that the ALJ's decision violated the treating physician rule.

The ALJ acknowledged that Dr. Zimmerer was a treating physician, but rejected his November 2013 opinion that Plaintiff "appears to be disabled at this time." (ECF No. 11-2 at PAGEID## 867, 1266.) He also rejected the opinions Dr. Zimmerer offered on the June 2015 medical statement form he completed.

The ALJ offered numerous reasons for rejecting Dr. Zimmerer's opinions, including that Dr. Zimmerer failed to provide sufficient clinical and laboratory data to support his conclusions, that he failed to provide a detailed function-by-function analysis that demonstrates the ability to perform any type of gainful activity (addressing the November 2013 opinion only), that his conclusions address an area that is specifically reserved to the Commissioner, and that he is a family practice physician with no reported expertise or training in mental health. He also noted that on the June 2015 statement, Dr. Zimmerer indicated that the opined limitations only existed "the past year," which the ALJ stated "suggests that even [Dr. Zimmerer] did not consider [Plaintiff's] limitations as severe prior to June 2014." (*Id.* at PAGEID## 871, 1469.) Finally, the ALJ pointed out that "Dr. Zimmerer has even noted three months earlier that he was unable to find any dramatic abnormality/dramatic physical finding to explain [Plaintiff's] reported symptoms." (*Id.* at PAGEID# 872.) The ALJ concluded that "[t]he totality of the medical evidence clearly supports that [Plaintiff] is not as severely assessed by Dr. Zimmerer."

The undersigned finds that the ALJ's offered good reasons for rejecting Dr. Zimmerer's opinions and that those reasons are supported by substantial evidence. First, as the ALJ properly observed, the Commissioner reserves the power to decide certain issues, such as a claimant's

residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to any particular weight or special significance. 20 C.F.R. § 404.1527(d); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Thus, the ALJ did not err in his rejection of Dr. Zimmerer's opinions that Plaintiff was unable to work.

In addition, substantial evidence supports the ALJ's assertion that Dr. Zimmerer's extreme assessments were not supported by his own treatment notes or sufficient clinical and laboratory data. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as a relevant consideration). Although Plaintiff asserts that the ALJ's conclusion in this regard amounts to a "slate of boilerplate justifications," (Pl.'s Statement of Errors, ECF No. 12 at PAGEID# 1645), he fails to cite to specific treatment notes she contends support the limitations Dr. Zimmerer opined. The ALJ, on the other hand, provides instances in which the objective testing failed to support Plaintiff's alleged complaints. The ALJ also correctly points out that even Dr. Zimmerer repeatedly observes that his examinations did not reveal abnormalities that would support Plaintiff's allegations. (*See*, *e.g.*, PAGEID# 1160 (observing that Plaintiff's MRI and MRA were normal and that his examination findings were unremarkable); PAGEID# 1368-69 (stating ""I have to admit I couldn't find any dramatic abnormality . . . There is not dramatic physical finding"); PAGEID# 1593 ("[Plaintiff] continues to have severe pain and I am uncertain to be able to determine what her underlying etiology is."); PAGEID# 1597 (recording normal and unremarkable findings); PAGEID# 1601 ("This doesn't look like fibromyalgia to me. Her tenderness does not seem to be point specific. She seems to

have joint sensitivity with movement. There is no obvious joint swelling or instability." . . . "There is no obvious etiology for her diffuse discomfort.").) The ALJ also offered a thorough discussion of the medical evidence in the record, including a discussion of both the objective testing results and the opinion evidence. The undersigned concludes that the ALJ reasonably discounted Dr. Zimmerer's opinions due to the inconsistencies the ALJ identified and the absence of support in the record for the limitations Dr. Zimmerer opined. *See Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent the with other substantial evidence in the case record.'").

Plaintiff's argument that the ALJ committed reversible error by dismissing Dr. Zimmerer's opinion based on his lack of mental-health specific expertise does not alter the undersigned's decision. Rather, the ALJ properly considered Dr. Zimmerer's lack of specialization in evaluating his opinions. *See* 20 C.F.R. § 404.1527(c)(4) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *Wilson*, 378 F.3d at 544 (specialization is an appropriate consideration). Certainly, if Dr. Zimmerer's lack of mental health expertise was the ALJ's sole basis for rejecting Dr. Zimmerer's opinions, the undersigned might reach a different conclusion. *See Drew v. Commissioner of Social Security*, No. 3:16-cv-00289, 2017 WL 2805098, at * 6 (S.D. Ohio June 29, 2017) (finding the ALJ's rejection of a family practice treating physician *solely* because he made a mental health diagnosis was not supported by good reasons) (emphasis added) *report and recommendation adopted*, No. 3:16-cv-289, 2017 WL 3024248, at * 1 (S.D. Ohio July 17, 2017). But, as discussed at length above, Dr.

Zimmerer's lack of specialization was just one of many factors the ALJ considered in weighing his opinions.

In summary, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in his assessment of Dr. Zimmerer's opinions. It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's contention of error relating to the ALJ's consideration of Dr. Zimmerer's opinions.

## C.      Evidence Submitted to the Appeals Council

Finally, Plaintiff asserts that remand is warranted for consideration of new and material evidence under sentence six of 42 U.S.C. § 405(g). In particular, Plaintiff contends that remand is warranted for consideration of Exhibits 26F (treatment notes from Genesis Health Systems dated from July 17, 2015, to August 11, 2015), 27F (treatment notes from Dr. Zimmerer dated from June 18, 2015, to October 23, 2015), and 28F (records from a July 25, 2015 emergency room visit).

Sentence six of 42 U.S.C. § 405(g) provides in relevant part as follows:

> The Court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42. U.S.C. § 405(g). "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S.

292, 297 n.2 (1993) (citations omitted).  The requirements that the evidence be "new" and

"material," and that "good cause" be shown for the failure to present the evidence to the ALJ

have been defined by the United States Court of Appeals for the Sixth Circuit as follows:

> "For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' . . .  Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . .  A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . .  [T]he burden of showing that a remand is appropriate is on the claimant."

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*,

279 F.3d 348, 357 (6th Cir. 2001)).  Although this evidence was submitted to the Appeals

Council, it may be considered by the Court only if the "good cause" standard is met.  *See Cotton*

*v. Shalala*, 2 F.3d 692 (6th Cir. 1993); *see also Foster*, 279 F.3d at 357.

Even assuming that the evidence at issue is new, the undersigned concludes that Plaintiff

has failed to establish good cause for failing to timely acquire and present the evidence.  Plaintiff

fails to offer any explanation for why she did not submit the at-issue exhibits prior to the August

15, 2015 deadline for submitting additional documents that the ALJ established during the

August 5, 2015 hearing based upon her counsel's request.  *See Hollon v. Comm'r of Soc. Sec.*,

447 F.3d 477, 485 (6th Cir. 2006) (claimant who fails to identify obstacles to timely submission

of evidence fails to demonstrate good cause).  Only part of the records in Exhibit 27F,

specifically records from Plaintiff's visits with Dr. Zimmerer in September and October 2015,

were created after the August 15, 2015 deadline.

Regardless, the undersigned further finds that Plaintiff has failed to satisfy her burden to

show that the evidence is material.  Rather than bolster her credibility as Plaintiff contends, the records she cites continue to reflect that her allegations of pain are not supported by clinical or objective findings.  (*Id.* at PAGEID# 1575; 1583.)  Rather, Plaintiff's providers continued to observe that the objective testing results do not provide an explanation for her alleged pain.  (*See*, *e.g.*, PAGEID# 1583 ("We do not have a clear explanation for her symptoms . . . ."); PAGEID# 1593 ("[Plaintiff] continues to have severe pain and I am uncertain to be able to determine what her underlying etiology is."); PAGEID# 1597 (recording normal and unremarkable findings); PAGEID# 1601 ("This doesn't look like fibromyalgia to me.  Her tenderness does not seem to be point specific.  She seems to have joint sensitivity with movement.  There is no obvious joint swelling or instability." . . .  "There is no obvious etiology for her diffuse discomfort.").)

Further, the records cut against Plaintiff's allegations of extreme pain because the records reflect instances of where Plaintiff rates her pain at a level 10/10 yet was observed by her provider to be in no distress.  (*See id.* at PAGEID## 1577-78 (rating her pain at 10/10 on July 17, 2015, but observed to be in no distress); PAGEID## 1579, 1582 (rating her pain at 10/10 on July 29, 2015, but observed to be in no distress) *see also* PAGEID## (rating her pain at 8/10 on August 11, 2015, but observed to be in no distress).)

Finally, Plaintiff's contention that the records' references to her headaches satisfy her burden to show materiality is unavailing.  Plaintiff cites to the Genesis treatment records from July 17, 2015, and July 29, 2015, pointing out that those records list headaches under the section titled "Past Medical History."  (Pl's Statement of Errors, ECF No. 12 at PAGEID# 1649 (citing ECF No. 11-8 at PAGEID## 1576, 1580).)  But review of the treatment records from those dates do little to support her allegations of disabling headaches because she specifically denied

33

headaches during both of those visits.  (*See* ECF No. 11-8 at PAGEID## 1577, 1581.)  Plaintiff also points to the records from her July 25, 2015 emergency room visit where she was diagnosed with a migraine headache.  Review of those treatment records, however, reveal that Plaintiff reported that she had been experiencing chronic headaches because "she ran out of her gababentin."  (*Id*. at PAGEID# 1617.)  This supports rather than undermines the ALJ's observation that Plaintiff had reported that her headaches were controlled with this medication. In summary, the undersigned concludes that Plaintiff has failed to satisfy her burden to establish with a reasonable probability that the ALJ's would have altered his determination upon consideration of the at-issue records.  It is therefore **RECOMMENDED** that the Court **DENY** Plaintiff's request to order a § 405(g) sentence six remand.

## VII.    DISPOSITION

Based on the foregoing analysis, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and the Commissioner's decision **AFFIRMED**.

## VIII.    PROCEDURES ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE